United States v. Lazcano-Leon, Mr. Bishop. May it please the court, I represent the appellant in this case, Mr. Alvaro Lazcano-Leon. Your Honor, this is a illegal re-entry case. My client was arrested in February of 2010 on a drug offense. At that exact same time, ICE learned of his presence in the United States. They interviewed him, they filed an immigration detainer or civil detainer, and then they waited 43 months before they indicted him on the illegal re-entry case. Probably the longest delay in bringing an indictment that I have seen. But are you saying that the judge was required to give concurrent sentences? No. Because if he, if he, if they had prosecuted, they could prosecute him, obviously, while he's in prison under a different charge. Well, I'm not saying it concurrent, and then what would be the, what would your argument be? I'm not saying that he was required, that the court was required to give concurrent sentences. And I've read case law which would suggest that's a speculative harm. But there are some real harms that did exist, that did take place, that impacted my client. And one of those harms was, had the government promptly brought the indictment in this case, and I've had this situation, I hate to rely on anecdotal evidence, but had the government brought the indictment promptly, he could have resolved his federal charge before his state charge. And what impact on his criminal history? He would have been a two rather than a criminal history category three. He would have been faced with a advisory sentencing guideline range of 41 to 51 months as opposed to 46 to 57 months. And I think that's a harm that could have been averted had they brought a criminal federal re-entry, illegal re-entry case. What's the legal error? I'm sorry. What is the legal error? The procedural error in this case takes place a little bit later in the transcripts, in the argument. He does discuss my argument with regard to the delay. But frankly, I thought I was winning at that point because he agreed with me. He agreed that this delay is intentional, it's deliberate. I submitted to the court that it's an egregious delay. And after discussing it, he dropped the argument. Really, with not much more than a wave of a hand, the procedural error is... Well, he pointed out that your client is a repeat drug trafficking offender. That's more than just a wave of the hand. Well, that's all he said. I mean, he didn't make any type of individualized assessment in this matter. He said nothing about my client. That's an individualized assessment. That's... Obviously, people with a lot of different backgrounds and criminal histories can wind up on one of these charges for illegal re-entry. And this is... I've seen worse, but this is not bad. Most are worse that I've seen. And with all due respect, Your Honor, it's somewhat of a circular argument. I mean, if you're charged with illegal re-entry, you're getting a bump of 16 levels for that recidivist crime. You almost have to be a recidivist to make this argument. I've written that for our court recently. I'm sorry. I have written... I've made that same point for our court recently in an opinion. But if you were just to say, he's a recidivist, that's a problem. But a recidivist drug offender, the judge is entitled to make that call, isn't he? I disagree with that. I think he needs to say more. I think, despite a blanket statement of, he's a recidivist drug offender... And we had a similar situation very recently in U.S. versus Estrada Maderas, where the court didn't say much more than that. The court said that the fact that this is a recidivist crime, the fact that he is engaged in other criminal activity is not in his favor, and then he went on to deny the argument. And we have one added element in this case. Don't forget that not only did he deny the request for a variance, which I think was a valid request, because as I said to the court, this is a reprehensible policy. I think the judge... Why is it that the judge can make appropriate adjustments? The policy itself, ICE's policy itself is reprehensible. That's what I'm referring to. Why? Because they make an intentional, deliberate decision to remove the option that a defendant may have to force the government to bring his case sooner, to use strategic... Make strategic decisions about the way his case is gonna be resolved. And most importantly, and I said this to the judge, what I find reprehensible is the fact that an individual is sitting in jail, serving on his sentence, completes his entire sentence, and he has no notice whatsoever that the federal government is waiting for him, ready to blindside him. What difference would it have made? I still don't understand. What is the harm to him of being prosecuted later rather than while he's in prison? Well, I think what I'm talking about... You said the guidelines range was affected on... The guideline range would be affected if he had been given a prompt, he'd been indicted promptly on the federal case, because again, all he had to do was resolve the federal charge first. Right, but there's no legal rule that says the federal charge has to come first. So you have no legal error to rest your argument on. This is all an argument about the equities and the harm and the consequences, but I'm still trying to focus on what your claim of legal error is. The procedural error. What was the procedural error? The procedural error was that the judge did not justify his sentence. That's false. He goes on for six paragraphs in the sentencing transcript explaining why he's rejecting your argument. What he says, and I would argue to the court that he misstates the 3553A factors, because he says, I don't care what the circumstances are. And I think when you see that statement, it could be interpreted, I certainly interpreted, that he's not considering my 3553A arguments. It certainly runs the risk. If you take that sentence by itself, it's obviously troubling. If you read what's before it and what's after it, it makes a lot of sense. Well, I don't agree with that, Your Honor, respectfully. I think what he says before and after that is that, I don't care what the circumstances are. The most important factor in this case is to protect the public from recidivist drug offenders. And he really doesn't say much more than that. What he goes on to say is wrong. He says, it's one thing to come across the border for noble purposes, such as to be with and help your family. It's another thing to come across the border and proceed to violate our laws. Well, that's not what happened here. My client came to this country in 2000 to help his family for noble purposes. He did not have any contacts with the law until 2010 after his rehab business failed. So he came across, for noble purposes, the exact opposite of what the court said. And he did not proceed to violate our laws. He worked for eight years until the real estate crisis. And then his life spun out of control. But even when he came across the first time in 1994, it was because his mother sent him across the border at the age of 17 to get a job and send money back home. He ignored all the 3553A factors that he probably should have addressed. I mean, some are stock arguments. I'll give you that. But he had an alcoholic father who used to beat his mother in front of him. Grew up penurious. Domestic abuse right in front of him. I talked about his medical conditions. I talked about his work experience. How do you prevent these people from coming back, coming back, coming back to engage in criminal activity? Well, I would dispute that statement. You know, there's a 20-year statutory maximum for him. I understand. There are reasons for that also, right? There are good reasons for that. But I don't think everybody can be treated the same. And that's why this case law that I've cited spanned Estrada Medeiros, Washington. They all say the same thing. An individualized assessment is required, not a general statement that this person is a recidivist drug offender. And that's enough. So I would to it to the court, that's the procedural error. And even if we're talking about the denial of the variance, that in itself, and you feel that, maybe he's said enough to deny the variance. He's not required to deny the variance. Why did he give him 55 months? Judge, I see my time is up. I would like to reserve. Okay, thank you, Mr. Bishop. You're welcome. Mr. Daniel. May it please the court. The district court's sentencing decision was both procedurally and substantively sound. The district court explicitly addressed the defendant's principle argument in mitigation, which asked the district court to reduce the defendant's sentence to account for the delay in charging the defendant with illegal reentry. The district court acknowledged its discretion to account for that delay, and explained that it would not do so because the defendant's past drug convictions and the need to protect the public from recidivist drug offenders. The district court also justified a sentence near the high end of the advisory guideline range by distinguishing the defendant from others who have entered this country illegally, but have, as the district court put it, not harmed the country in a particularly bad way while here. In this case, we have Mr. Lascano-Leon who returned to the United States after having been removed following a conviction for selling 250 grams of heroin. And whatever his reasons for coming here, at some point he decided to deliver a kilogram of cocaine to an undercover law enforcement officer. The district court, when he said, I don't care what the circumstances are, were referring to, it doesn't matter that his business went south. Mr. Lascano-Leon should not have sold a kilogram of cocaine to an undercover police officer. As far as where the sentence fell within the advisory guideline range, because it's within the advisory guideline range, it's presumptively reasonable. The district court further elaborated by setting him apart from others who have been convicted of illegal reentry, but who may not have had the two drug offenses that the defendant had. Because the district court explicitly considered the defendant's argument, acknowledged its ability to reduce the defendant's sentence to account for that delay, and provided a reasoned basis for not doing so, and provided a reasoned basis for sentencing the defendant near the high end of the advisory guideline range, it's admitted that there was no procedural or substantive error. I'd also note the defendant raised the policy that there are two safeguards with respect to any policy that the government may have in bringing these types of cases. One, we have the statute of limitations, which limits the government's discretion as to how long anyone could bring charges against someone who would illegally reenter. And then there's also the district court's discretion to account for it. In this case, the district court was not able to impose a concurrent sentence, but it certainly had the discretion to reduce the defendant's sentence to account for the delay. The district court was clear that it would not do so because of the defendant's past conduct and the need to protect the public from recidivist drug offenders, and therefore this court should affirm the conviction and sentence. Absent any further questions, any questions from the panel, the government asks this court to affirm. Okay, thank you Mr. Daniel. Mr. Bischoff? Mr. Carlin? A guideline sentence within that guideline range is presumptively reasonable, and Spann says this, he still has an obligation to justify his sentence with reference to the 3553A factors. And as I started to say, and I just want to finish this point, what he said with regard to the 3553A factors was just a misstatement of what happened in this case. He goes on to talk about my client in the context of shootings between gangs, trying to control drug territories, drug use by children and their parents, and it's a perfect example of everything he said, just a general statement of what applies to anybody who's committing a drug traffic offense, but my client was not in a gang. He never used a gun. There's no gun in this case. He's never been involved with a gun. He's not a violent individual. I've never been involved with violence. He's not a member of a DTO, no connections to a cartel, not in a gang, not fighting over turf wars. This guy worked 10 years to support his family, and I think it's significant. Thank you.